## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____ )
                                                          )
**DREW COMPANY, INC.,**                                   )
    **Plaintiff**                      )
    **v.**                              )
                                                          )     **C.A. No.**
**KEVIN K. MCALEENAN, Acting Secretary, U.S. Department** )
**of Homeland Security; U.S. DEPARTMENT OF**              )
**HOMELAND SECURITY; U.S. CITIZENSHIP AND**               )
**IMMIGRATION SERVICES, and LAURA B. ZUCHOWSKI,**         )
**Director, USCIS Vermont Service Center.**               )
    **Defendants.**                      )
_____ )

## PLANTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

This action is brought by the Plaintiff, **Drew Company, Inc.,** against the Defendants to seek review of a February 27, 2019 decision of the U.S. Citizenship and Immigration Services improperly denying the Plaintiff's Form I-129 visa petition to classify its intended beneficiary as an H-1B nonimmigrant worker under Section 1101(a)(15)(H)(i)(B) of the Immigration and Nationality Act. The Plaintiff seeks a declaratory judgment declaring the decision of the Defendants dated February 27, 2019 to deny the Plaintiff's H-1B visa petition for Mr. Oleksii Vekla unlawful, reversing the February 27, 2019 decision to deny the Plaintiff's petition to change Oleksii Vekla's status to the H-1B visa category, ordering the Defendants to approve Oleksii Vekla's H-1B status with an effective date of October 1, 2018 through September 20, 2021, ordering the Defendants to issue a decision approving the Plaintiff's H-1B petition on behalf of Oleksii Vekla, and striking the Defendants February 27, 2019 decision as unlawful and

in violation of the Immigration and Nationality Act and associated regulations and the Administrative Procedure Act. The Plaintiff also seeks injunctive relief against the Defendants to prevent them from taking further action on Oleksii Vekla's case other than issuing the corrected decision requested herein. The Plaintiff seeks action on this petition on an emergency basis due to circumstances set forth in this complaint.

## PARTIES

1.      The Plaintiff, **Drew Company, Inc. (hereinafter "Drew")**, is a privately held real estate development, management and consulting firm with a principal place of business at 2 Seaport Lane, 9th Floor, Boston, Massachusetts. Drew legally employed the intended beneficiary of its H-1B visa petition, Oleksii Vekla, in the position of Market Research Analyst since May, 2017 based on his valid employment authorization document issued by the Defendant, U.S. Citizenship and Immigration Services.

2.      The Defendant, **Kevin K. McAleenan**, is being sued in his official capacity as the Acting Secretary of the Department of Homeland Security.  In this capacity, he is charged with the administration and enforcement of the immigration laws, pursuant to 8 U.S.C., §1103, and he possesses extensive discretionary powers to grant certain relief to non-U.S. Citizens. More specifically, the Acting Secretary of the Department of Homeland Security is responsible for enforcing the Immigration and Nationality Act (INA) and for approving applications for nonimmigrant visa petitions and providing foreign nationals with evidence of their legal status in the United States. The U.S. Citizenship and Immigration Services is an agency within the Department of Homeland Security to whom the Secretary's authority has in part been delegated, and is subject to the Secretary's supervision.

3.      The Defendants, **Department of Homeland Security (hereinafter "DHS") and the**

**U.S. Citizenship and Immigration Services (hereinafter "USCIS")** are the agencies

responsible for enforcing the INA and for adjudicating and approving applications for

nonimmigrant visa petitions and providing foreign nationals with evidence of their legal status in

the United States.

 4.      The Defendant, **U.S. Citizenship and Immigration Servic**es**,** includes the **Vermont**

**Service Center.** The Defendant, **Laura B. Zuchowski**, is sued in her official capacity as the

Director of the Vermont Service Center which is the place where the Plaintiff's immigration file

may currently be located and which made the decision at issue in this case. The Vermont Service

Center is located at 75 Lower Welden Street, St. Albans, VT 05479.

## JURISDICTION

5.      Jurisdiction in this case is proper under the Immigration and Nationality Act (INA), 8

U.S.C. § 1101 *et seq.*; 28 U.S.C. §§ 1331 and 1361; the Administrative Procedures Act (APA), 5

U.S.C. § 701 *et seq.*; and 28 U.S.C. § 2201 *et seq.*  Relief is requested pursuant to said statutes.

There is an actual and justiciable controversy between the parties and the Plaintiff seeks

declaratory and injunctive relief in this action.

## VENUE

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(e), in that this is an action

against officers and agencies of the United States in their official capacities, brought in the

District where the Defendants conduct business and where a substantial part of the events or

omissions giving rise to the Plaintiff's claims occurred.  More specifically, the Plaintiff is a

corporation with its principal place of business in Boston, Massachusetts, and the beneficiary of

the Plaintiff's visa petition was employed in Massachusetts at all times when the events at issue

in this case occurred. The Plaintiff's visa petition that is in dispute was decided by the USCIS

Vermont Service Center which has jurisdiction over non-immigrant visa petitions filed by

Massachusetts employers.

## EXHAUSTION OF REMEDIES

7.      The February 27, 2019 decision by the Defendant USCIS to deny the Plaintiff's H-1B

visa petition for its intended beneficiary, Oleksii Vekla, constitutes a final agency action under

the APA, 5 U.S.C. § 701 *et seq*. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a)

require an administrative appeal of the denial. Accordingly, the Plaintiff has no administrative

remedies to exhaust. Moreover, exhaustion of any available administrative remedies will be

meaningless and ineffective given the issues in this case and this lawsuit is the Plaintiff's only

legal means to rectify the situation. The Plaintiff has no other viable remedy or legal avenue to

pursue in connection with this issue other than this action.

## FACTUAL AND LEGAL ALLEGATIONS

8.      The Plaintiff, Drew, is a privately held real estate development, management and

consulting firm which oversees a broad range of ventures spanning real estate, hospitality,

technology and entrepreneurial investments. Drew develops and operates hospitality venues,

convention and exhibition centers, entertainment facilities and global trade centers world-wide.

Drew has been involved in the development of over ten million square feet of commercial real

estate since 1982. Drew employs a total of 380 people with 10 individuals working in its Boston

office. Each employee in the Boston office who is engaged in the technical work performed by

Drew possess a bachelor's degree or higher. Given the very technical and sophisticated nature of

its work Drew must hire individuals with the requisite education and experience in order to

produce the results expected by its clients.

9.      The position of Market Research Analyst with Drew is one that requires, at a minimum, a

bachelor's degree or higher in economics, political economy, business or international trade or a

related field. In this position, the Market Research Analyst monitors and forecasts industry

specific marketing and sale trends, devises and evaluates methods for collecting data, such as

surveys, questionnaires and opinion polls, converts complex data and findings into

understandable tables, graphs, and written reports, directly participate in the loading, indexing

and publishing WebPort Global Team ("WPG") content with a specific focus on Eastern Europe,

Russia and China, conducting foreign language content validation, develop and issue trade

research and reporting, compile database research and country reports, support the layout and

publishing of the WPG newsletter, support customer knowledge and understanding of WPG and

its databases, working with international companies to generate marketplace listing, create trade

reports and analytics, source international databases, curation of a trade library, and work with

the World Trade Center, Boston, Washington, DC and Dublin teams to support World Trade

Center Association ("WTCA") initiatives.

10.     The intended beneficiary of the Plaintiff's H-1B petition, Oleksii Vekla, is a 27 year old

native and citizen of the Ukraine. Prior to entering the United States Mr. Vekla obtained a

bachelor's and a master's degree in international economics and management faculty from Kyiv

National Economics University in Ukraine. Mr. Vekla entered the United States in August, 2015

with an F-1 visa so he could pursue further education in the United States. In April, 2017 Mr.

Vekla obtained his Master of Science Degree in Global Studies and International Relations from

Northeastern University in Boston, Massachusetts. After his graduation Mr. Vekla became

eligible to apply for an employment authorization document (EAD) which would permit him to

work in the United States based upon what is called Optional Practical Training (OPT) for a one

year period beyond the date of his graduation. Subsequent to obtaining his Master's Degree Mr.

Vekla applied for and obtained his OPT EAD card with a validity period of May 1, 2017 through

April 30, 2018.

11.      In May, 2017 the Plaintiff began employing Oleksii Vekla in the position of Market

Research Analyst. From the date of his initial employment Mr. Vekla worked for the Plaintiff as

a Market Research Analyst in valid immigration status with his OPT EAD card. Based on Mr.

Vekla's performance and capabilities, the Plaintiff decided to sponsor him for a change of status

from F-1 student visa to the H-1B visa category. The change of status would permit Mr. Vekla to

remain in the United States and would allow the Plaintiff to continue employing Mr. Vekla

beyond the April 30, 2018 expiration date noted on his OPT EAD card. The Plaintiff invested a

substantial amount of time and money in legal fees and costs, including filing fees in this

endeavor.

12.      Prior to the agency action that precipitated this litigation, Oleksii Vekla was working on

projects for the Plaintiff which were well into the development phase. Mr. Vekla's work was

critical to the success of various projects and his absence from work has been devastating to the

Plaintiff's business. In his position as Market Research Analyst on these projects, Mr. Vekla was

an essential member of both the business and development teams, which included key initiatives

directly with clients on market research reports to assist their businesses with international trade

opportunities and his continued involvement with each project was essential to the overall

success of the Plaintiff's work. As a result of Mr. Vekla's absence the Plaintiff's business is

short-handed and its clients have expressed serious concerns about the lack of resources

available to finish the work. In order to provide the agreed upon services to its clients, the

Plaintiff has been forced to complete a recent phase of one project by using high-level resources

at the company who had to put other projects on hold.  Once the Plaintiff and Mr. Vekla learned

of the denial, Mr. Vekla filed an application to change his status from F-1 to B-2 so he could

remain in the United States legally, but he cannot work. Due to the erroneous denial of the H-1B

petition, the Plaintiff is now deprived of Mr. Vekla's services and has been forced to seek

temporary replacements and to re-allocate assignments within the project teams where his work

was critical. As a result of the Defendants' actions, the Plaintiff has suffered considerable

financial loss and disruptions to its projects.

**The H-1B Visa Category and the Petitioning Process**

13.     The H-1B program allows U.S. employers to legally hire foreign nationals to temporarily

work in a "*specialty occupation*" for a maximum period of six (6) years, plus additional

extensions as permitted by law. *See* INA § 101(a)(15)(H)(i)(b); 8 U.S.C. § 1184(g)(4); and §

104(c), American Competitiveness in the Twenty-First Century Act (AC21), Title 1, § 104(c),

Pub. L. 106-313 (Oct. 17, 2000).  A "*specialty occupation*" is defined by statute as one that

requires, "(A) theoretical and practical application of a body of highly specialized knowledge,

and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as

a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i).

14.     Congress set the current annual cap for the H-1B category at 65,000.  Not all H-1B

nonimmigrant petitions are subject to this annual cap.  Each year 6,800 H-1Bs are set aside from

the 65,000 fiscal year quota for the H-1B1 program under the terms of legislation implementing

the U.S.-Chile and U.S.-Singapore free trade agreements. Unused visas in this group become

available for H-1B use for the next fiscal year. In addition, 20,000 H-1Bs are accepted under the

U.S. advanced degree exemption, known as the master's cap. This annual cap is imposed each

fiscal year, which commences on October 1st.  In order for the petitioner to file and have their H-1B petition accepted by the Defendant USCIS for a particular fiscal year, an employer must file the H-1B petition during the first five business days in April ("cap filing period"), which is six months in advance of the preceding fiscal year. Once the USCIS determines it has received more than enough petitions to fill the annual visa quota, it stops accepting cap-subject petitions until the next fiscal year's cap filing period. As a result of the annual cap limitation, if more petitions are received by the USCIS during the filing period than permitted by the annual cap, the USCIS imposes the regulatory random lottery system of determining what petitions will ultimately be accepted.  All of the FY 2019 H-1B petitions were submitted to the lottery.

15.     The H-1B process involves two major steps. First, the petitioning employer must submit a Labor Condition Application (LCA) to the Department of Labor (DOL) for certification. Second, in order for a foreign national to obtain H-1B status, a U.S. employer, the Petitioner, must file a nonimmigrant H-1B petition on behalf of the sponsored employee with the Defendant, USCIS. Each petition must be accompanied by a certified LCA that corresponds with the sponsored position. If the foreign national, the beneficiary of the petition, is in the United States in another valid nonimmigrant status, such as an F-1 student, at the time the petition is filed with the USCIS, the petitioning employer may request a change of nonimmigrant status to reflect the H-1B category.

16.     The LCA certification requirement was implemented with the objective of protecting H-1B workers from wage abuses and U.S. workers from unfair competition. DOL uses the LCA to certify a prevailing wage for the job category and geographic location listed by the employer, in accordance with its statutory authority and pursuant to the implementing regulations at 20 CFR 655.731 and its internal guidelines, including the *U.S. Department of Labor Employment and*

*Training Administration's, Prevailing Wage Determination Policy Guidance, Nonagricultural*

*Immigration Programs (revised November 2009)* ("Wage Guidance") and available at

http://www.flcdatacenter.com/download/NPWHC_Guidance_Revised_11_2009.pdf,

 published on AILA InfoNet at Doc. No. 10010468. Upon submission of the LCA, employers

attest that the prevailing wage information for the specific occupational classification entered on

the application complies with the DOL's regulations at 20 CFR § 655.731.

17.     To be in compliance with the H-1B program's requirements and the LCA attestations,

employers preparing LCAs must either request a wage determination from the DOL or must

follow a multi-step process developed by the DOL to select the appropriate prevailing wage

source and wage rate, and must list both on the LCA form.  As part of this process, typically

employers consult the Occupational Information Network (O'NET), which can be found at

https://www.onetonline.org/, to determine which occupational category and corresponding

Standard Occupational Classification (SOC) code most closely conforms to the sponsored H-1B

positon. O'NET is a data base developed under the sponsorship of the DOL which contains

hundreds of standardized occupations, but not job-specific descriptors on almost 1,000

occupations covering the entire U.S. economy, including the typical or "normal" job duties and

qualifications for entry into specific occupational categories. Using the selected SOC code from

the O'NET employers will then locate the corresponding prevailing wage rate for the geographic

area of intended employment using the Bureau of Labor Statistics' (BLS) Occupational

Employment Statistics (OES) wage data, which is available in the Foreign Labor Certification

Data Center Online Wage Library (OWL), found online at http://www.flcdatacenter.com/.

18.     H-1B petitions filed with a certified LCA are adjudicated by the Defendant, USCIS. To

secure an approval of its H-1B petition, the U.S. employer must submit a petition and prove by

the preponderance of evidence that the job offered to the foreign national is one that meets the definition of *specialty occupation*, that the compensation offered for the position meets the (higher of prevailing or actual wage) proffered wage that was certified on the underlying LCA in accordance with the standards set by the DOL for similar occupations in the same geographical locations, the U.S. employer has the ability to pay the beneficiary the offered wage, and that the beneficiary meets the minimum requirements for the professional positon. To qualify as a "*specialty occupation"* the relevant regulation states that the position must meet at least one of the following criteria: (1) a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) the degree requirement is common to the industry in parallel positions among similar organizations, or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree; (3) the employer normally requires a degree or its equivalent for the position; or (4) the nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree. 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

19.      To adjudicate an H-1B petition, USCIS must ultimately determine whether the petitioning employer's job qualifies as a *specialty occupation* and whether the foreign national on whose behalf the petition was filed, referred to as the beneficiary, is qualified to perform the job duties required by the specialty occupation. *See* 8 C.F.R.§§ 214.2(h)(4)(i)(A)(1), (h)(4)(iii)(B)(3). Upon acceptance of a petition for H-1B visa status, USCIS adjudicators must also determine whether the petition is supported by an LCA which corresponds with the petition and whether the job offer named in the H-1B petition is a specialty occupation in accordance with 8 CFR §214.2(h)(4)(i)(B).  While USCIS is directed to review the LCA when making this

determination in the context of adjudicating H-1B petition, the scope of review by USCIS is very limited and must focus solely on a determination as to whether the sponsored position is a "specialty occupation." To the extent the job offered meets the statutory definition of "specialty occupation" as defined in the INA and all  other components of the petition satisfy the H-1B visa requirements, the USCIS should approve the petition.

**The Plaintiff's H-1B Visa Petition for Oleksii Vekla**

20.     In the first week of April, 2018, the Plaintiff filed a visa petition for Oleksii Vekla in order to change his status from F-1 student with OPT to the H-1B visa category. Prior to filing the visa petition, the Plaintiff obtained a certified LCA from the DOL using the job tile, "Market Research Analyst" and the corresponding SOC (O'NET/OES) Code of 13-1161. The DOL accepted both the specific job category and the prevailing wage set forth by the Plaintiff in the LCA and certified the form. A copy of the certified LCA with required redactions is attached hereto as Exhibit A.

21.     In addition to the certified LCA, the Plaintiff's H-1B petition included evidence that the position of Market Research Analyst is a specialty occupation, that the Plaintiff has more than sufficient funds to pay Oleksii Vekla the prevailing wage of $44,658.00 as certified by the DOL on the LCA and that it was in fact paying Mr. Vekla that salary at the time it filed the petition, and that Oleksii Vekla is qualified for the Market Research Analyst position. The petition included a letter from the Plaintiff that described in detail the specific job duties being performed by Oleksii Vekla as a Market Research Analyst. Those duties, set forth in detail in paragraph 9 above, are consistent with the job duties identified under O'NET Code 13-1161 as set forth on the Plaintiff's certified LCA.

22.      The Plaintiff's H-1B petition was accepted in the visa lottery for adjudication. Therefore,

Oleksii Vekla continued to work for the Plaintiff and the Plaintiff planned to have him as an

employee well beyond the April 30, 2018 expiration date on his OPT EAD card. The longer Mr.

Vekla worked for the Plaintiff, the more dependent the Plaintiff became on his work and Mr.

Vekla became a critical member of the Plaintiff's teams working on various projects for its

clients. In fact, the Plaintiff's H-1B visa petition was Oleksii Vekla's only hope to remain in the

United States with permission to work in this country for a lengthy period of time.

23.      By notice dated October 30, 2018, the Defendant, USCIS issued a Request for Evidence

("RFE") in which it alleged that the Plaintiff did not explain how its requirement for a bachelor's

degree in economics, political economy, business or international trade, "is directly related to the

duties and responsibilities of the proffered position and/or how each of the fields of study under

this generalized heading would relate to the duties and responsibilities of the proffered position."

The RFE identified several areas where the USCIS believed the petition failed to support the

finding that the Market Research Analyst is a specialty occupation. Specifically, the RFE states:

(1) the Plaintiff failed to prove that,  "a bachelor's degree or higher in a *specific* specialty or its

equivalent is normally the minimum requirement for entry into the particular position;" (2) the

Plaintiff failed to provide any evidence to substantiate that a bachelor's degree or higher in a

specific specialty or its equivalent, is common to the industry in parallel positions among similar

organizations; (3) the Plaintiff failed to show that the duties and responsibilities described in the

Plaintiff's petition do not establish the need for an individual who possesses the minimum of a

baccalaureate degree in a specific field of study; (4) the Plaintiff failed to show that a specific

bachelor's degree is normally required for the position; (5) the Plaintiff failed to establish how

each of the qualifying fields of study referenced in the petition is directly related to the duties

and responsibilities of the positon; and (6) the Plaintiff failed to show the job duties are so

specialized and complex that the beneficiary must possess a baccalaureate degree in a specific

field of study.  In support of its initial determination that the Market Research Analyst  position

does not qualify as a specialty occupation, the RFE references the DOL's Occupational Outlook

Handbook (OOH) citing the OOH educational requirements for the Market Research Analyst

position. The RFE states, "The OOH does not indicate that Market Research Analysts and

Marketing Specialists positions normally require a minimum of a bachelor's degree in a *specific*

specialty." Thus, the Defendant, USCIS, directed the Plaintiff to provide additional

documentation on these issues, including, inter alia, any evidence available to prove that a

Market Research Analyst requires a bachelor's degree in a *specific* specialty. A copy of the RFE

is attached hereto as Exhibit B.

24.     The Plaintiff filed a timely response to the RFE. In its response, the Plaintiff submitted

nineteen (19) separate exhibits which addressed in detail each criteria required by statute and

regulation to prove the Market Research Analyst position qualifies as a specialty occupation. The

exhibits included an expert advisory opinion letter signed by two (2) experts in the field,

evidence of the beneficiary's qualifications for the positon, a detailed letter from the Plaintiff

with specific job duties for the Market Research Analyst position, information from the OES,

O'NET and OOH, evidence of recruitment efforts by similarly situated companies for the same

position, a corporate chart for the Plaintiff's business, and various other documents, all of which

confirm that a bachelor's degree or higher is the industry standard for a Market Research Analyst

and that the that the position is a specialty occupation for the purpose of the H-1B visa category.

Counsel for the Plaintiff submitted a cover letter with the evidence and a written response that

explained the Plaintiff's legal and factual position regarding the viability of the Plaintiff's H-1B

petition. Copies of counsel's response, the expert advisory opinion letter, and the associated package are attached hereto as Exhibit C.

25.     The evidence submitted by the Plaintiff with its visa petition and its response to the RFE confirmed beyond a preponderance that the position of Market Research Analyst meets both the statutory and regulatory definition of "specialty occupation." Specifically, the Plaintiff's response to the RFE included considerable evidence that demonstrated: (1) a baccalaureate or higher degree in International Business, Economics, Business Administration, Marketing or another closely related field **or its equivalent** is normally the minimum requirement for entry into the Market Research Analyst position; (2) that the intended beneficiary's position as a Market Research Analyst at Drew is so complex and unique that it can be performed only by an individual with a degree in a business related field such as the ones the intended beneficiary obtained; (3) that a bachelor's degree in a business related field is common to the industry; (4) that Drew normally requires a degree for the position; and (5) that the Market Research Analyst's specific duties are so specialized and complex that knowledge required to perform the duties is  associated with the attainment of a baccalaureate or higher degree.  Satisfaction of any one of these criterion compels the conclusion that the Market Research Analyst position is a specialty occupation.

26.     On February 27, 2019, the Defendant, USCIS, denied the Plaintiff's H-1B visa petition based on an erroneous determination that the Plaintiff failed to establish that its petition was supported by evidence that the position of "Market Research Analyst" is a specialty occupation. As a result of this decision, the Plaintiff will now be as deprived of Mr. Vekla's services on a long-term basis. A copy of the decision is attached hereto as Exhibit D.

27.     The decision to deny Plaintiff's petition is predicated on multiple misinterpretations and

misapplications of the law and the facts by the Defendant, USCIS, and evidences a clear

disregard for its adjudicative responsibilities, which, at the most basic level, include the

requirement to properly review and consider the record, and to apply the correct legal standard in

the adjudicative process. Specifically, in this case, the Defendant, USCIS, determined that

although the intended beneficiary of the H-1B visa petition is qualified to perform the job duties

for the Market Research Analyst position, the Market Research Analyst position itself is not a

specialty occupation. The CIS determination that the Market Research Analyst position is not a

specialty occupation is based in part on its reading of the OOH. In its decision denying the

Plaintiff's H-1B petition, the Defendant, cites the OOH as follows:

> USCIS routinely consults the OOH for information about the educational requirements of
> particular occupations….the OOH does not indicate that Market Research Analysts and
> Marketing Specialists positions normally require a minimum of a bachelor's degree in a
> specific specialty. A range of educational credentials may qualify an individual to
> perform the duties for the positon of Market Research Analysts and Marketing
> Specialists.

*See Exhibit D at page 4.*

28.     The USCIS's reliance on the OOH for its decision to deny the Plaintiff's H-1B visa

petition is entirely misplaced. In fact, the OOH includes a disclaimer that specifically states,

"[T]he OOH provides a general, composite description of jobs and cannot be expected to reflect

work situations in specific establishments or localities….The OOH, therefore, is not intended to,

and should never, be used for any legal purpose…..[T]he information in the OOH should not be

used to determine if an applicant is qualified to enter a specific job in an occupation." The

USCIS' reliance on a resource that disavows its legal relevance and connection to the H-1B

process is arbitrary and capricious.

29.     Notwithstanding the USCIS' misguided reliance on the OOH, the Defendant actually

misreads and misapplies the OOH. The OOH clearly states that the typical entry level education

for Market Research Analysts and Marketing Specialists is a bachelor's degree

https://www.bls.gov/ooh/business-and-financial/market-research-analysts.htm. The degree

requirement for a Market Research Analyst is not limited to a bachelor's degree in a *specific*

specialty. Rather, a degree itself must be required as a minimum for entry into the occupation.

Provided a degree is required and the degree is related to the position, the position itself will

qualify as a specialty occupation for the purpose of the H-1B visa category. This reading of the

OOH is entirely consistent with the definition of *specialty occupation* under 8 U.S.C. § 1184(i)

which requires attainment of a bachelor's or higher degree in the specific specialty **(or its**

**equivalent.).** Thus, to the extent it is even appropriate for the USCIS to reference the OOH when

evaluating specialty occupations in the H-1B context, it is incumbent on the agency to correctly

interpret the resource. It is further incumbent on the agency to correctly read and interpret the

evidence provided by the Plaintiff to support its legal position, but the Defendant failed in this

regard. As such, the Defendant's, USCIS actions were unlawful and in violation of the APA §

706.

30.     The Plaintiff provided an expert advisory opinion signed by two (2) experts in the field

which details why a bachelor's degree or higher is the minimum requirement for the Market

Research Analyst position and clearly explains how the positon offered by the Plaintiff meets the

statutory and regulatory definition of a specialty occupation. In its decision the USCIS disavows

the expert opinion, first by attacking each expert's experience, lack of research on the industry,

and the foundation for the expert opinion, then by stating, "while the Professor provides a brief,

general description of your business activities, he/she does not demonstrate an in-depth

knowledge of your operations or how the duties of the offered positon would actually be

performed in the context of your business enterprise….while the evaluator may have anecdotal

information regarding recruitment by employers for students who study Biochemistry,

Chemistry, Mathematics, Sciences, and Arts, the record does not include any relevant research,

studies, surveys, industry publications, authoritative publications or other sources of empirical

information as part of his/her review or as a foundation for his/her opinion."

31.     The expert advisory opinion letter is anything but general. In fact, it is detailed and

specific and it clearly shows that the Market Research Analyst positon at Drew is a specialty

occupation. *See* Exhibit D. Defendants' USCIS assessment of the expert advisory opinion letter

is both arbitrary and capricious.  The Plaintiff's additional documentation bolsters the expert

opinion letter and confirms well beyond a preponderance of the evidence that the intended

beneficiary's education relates directly to the work being performed and that the specific duties

of the Market Research Analyst position are so complex that a bachelor's degree or higher in a

field such as the one possessed by the intended beneficiary of the H-1B petition is required for

the position.

32.     The Defendant's USCIS decision failed to properly interpret the Plaintiff's evidence and

applied an erroneous legal standard in the adjudicative process. The Plaintiff's evidence proved

that in order to be a Market Research Analyst at Drew the employee must possess at minimum a

Bachelor's or Master's Degree in Economics, Political Economy, Business or International

Trade (BA Required) or another business related field of study, or its equivalent. Drew's

educational requirements for the Market Research Analyst position are not general and wide-

ranging degrees.  A Bachelor's or Master's Degree in Economics, Political Economy, Business

or International Trade (BA Required) or another closely related field of study is clearly a degree

requirement in a specific specialty that directly relates to the duties and responsibilities for the Market Research Analyst position.  The USCIS decision to deny the Plaintiff's H-1B petition based on lack of a degree in a specific specialty or its equivalent is both arbitrary and capricious.

33.      The applicable USCIS regulation in 8 CFR §214.2(h)(4)(ii), specifically names "business specialties" as a clear example of an occupational category that always satisfies the criteria of a specialty occupation. It states that,  "[s]pecialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, **business specialties**, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States."   The Plaintiff's evidence showed that its Market Research Analyst position is a very specialized business occupation that requires specific educational background and knowledge. Consequently, in accordance with 8 CFR §214.2(h)(4)(ii), if it is determined that the sponsored position corresponds to the occupational category of **business specialty**, which the Market Research Analyst positon at Drew clearly does, it necessarily follows that such position is eligible for the H-1B classification as a "specialty occupation."

34.      Since the denial of the Plaintiff's H-1B visa petition, Mr. Vekla is no longer permitted to work in the United States and has sought another non-immigrant visa status in order to preserve his immigration status for the future and to ensure there would be no legal impediment to his return to work at Drew if the Plaintiff prevails in this lawsuit. Similarly, due to the erroneous denial of the H-1B petition, the Plaintiff is now deprived of Mr. Vekla's services and has been forced to seek temporary replacements and to reallocate assignments within the project

teams where Mr. Vekla's work was critical. As a result of the Defendants' actions, the Plaintiff

has suffered considerable financial loss and disruptions to its business.

## COUNT ONE

**Violation of the Administrative Procedure Act 5 U.S.C. § 701, et seq.**

35.     The Plaintiff repeats and re-alleges the allegations in paragraphs 1-34 above and

incorporates them herein by reference.

36.     The Defendants improper denial of the Plaintiff's H-1B petition is an agency action and

is reviewable under the Administrative Procedure Act.

37.     A reviewing court shall "hold unlawful and set aside agency action . . . found to be—

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A). The Defendant, USCIS erroneously denied the Plaintiff's H-1B visa petition on the

ground that the evidence in the record was insufficient to establish that the positon of Market

Research Analyst is not a specialty occupation.

38.     The Defendant, USCIS failed to properly consider and interpret all evidence, misread the

voluminous documentation in the Plaintiff's response to the RFE and erroneously concluded that

the Plaintiff's petition was not supported by the evidence. In so doing, the Defendant violated its

duty to properly adjudicate the Plaintiff's H-1B visa petition.

39.     The Defendant, USCIS denial of the Plaintiff's visa petition is arbitrary and capricious.

Under 5 U.S.C. §§ 702 and 704, the Plaintiff has suffered a "legal wrong" and has been

"adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

40.     The damage to the Plaintiff is irreparable. This lawsuit presents the only viable solution

to the Plaintiff's problem.  The Plaintiff seeks preliminary injunctive relief to prevent further

action by the Defendants on this case until such time as the court can rule on the merits of the

Plaintiff's claim.

41.     As a direct result of the Defendant's, USCIS decision the Plaintiff has lost the benefit of

Oleksii Vekla's services. To the extent relief as requested in this Complaint is not granted the

harm to the Plaintiff is irreparable. The Plaintiff is entitled to a declaratory judgment approving

its petition for Oleksii Vekla and changing his status from F-1 to the H-1B visa category from

October 1, 2018 through September 20, 2021. The Plaintiff requires this approval immediately so

that Oleksii Vekla can return to work.

42.     The Defendants, in violation of the Administrative Procedures Act, 5 U.S.C. § 701 et

seq., have unlawfully and unreasonably denied the Plaintiff's petition. The Defendants have

failed to properly carry out the adjudicative functions delegated to them by law with regard to the

Plaintiff's case. The Plaintiff is entitled to evidence of Oleksii Vekla's valid H-1B status and

now seeks a Court order requiring the Defendants to provide such evidence. The Plaintiff also

requests a declaratory judgment confirming that its petition was improperly denied and further

seeks preliminary injunctive relief to prevent the Defendants from taking any adverse action on

this case inconsistent with the approval of the Plaintiff's petition for the period requested.

## **PRAYERS FOR RELIEF**

WHEREFORE the Plaintiff respectfully prays that this honorable Court enter an order:

(a)     accepting jurisdiction over this matter;

(b)     temporarily restraining and enjoining the Defendants from taking any action against the
Plaintiff inconsistent with approval of the Plaintiff's petition to approve Oleksii Vekla's H-
1B status effective October 1, 2018 through September 20, 2021 and to permanently
restrain and enjoin the Defendants from revoking or otherwise denying Oleksii Vekla his
nonimmigrant status as requested;

(c)     declaring that the Defendants denial of Drew Analytics' H-1B visa petition for Oleksii Vekla was arbitrary, capricious, and unlawful and ordering the Defendants to correct the determination by issuing an approval of Oleksii Vekla's H-1B status effective October 1, 2018 through September 20, 2021;

(d)     requiring Defendants to provide the Plaintiff with evidence of Oleksii Vekla's H-1B nonimmigrant status by producing the required approval notice;

(e)     award the Plaintiff all costs and reasonable attorney's fees associated with this matter; and

(f)     granting such other relief at law and in equity as justice may require.

**Respectfully submitted,**

**Drew Company, Inc.**
**By its attorneys,**

**/s/ Anthony Drago, Esq.**
**Anthony Drago, Esq. (BBO #552437)**
**Anthony Drago, Jr., P.C.**
**35 India Street**
**Boston, MA 02110**
**(617) 357-0400**
**Anthony@adragopc.com**

**/s/ Brian T. O'Neill, Esq.**
**Brian T. O'Neill, Esq. (BBO # 628485)**
**Law Offices of Brian T. O'Neill, PC**
**50 Congress Street, Suite 236**
**Boston, MA 02109**
**617-722-4000**
**boneill@btolawpc.com**